**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SARAH MOLESKI, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>     Plaintiff,<br><br>     v.<br><br>TANGOE, INC., ALBERT R. SUBBLOIE, JR., AND GARY R. MARTINO,<br><br>     Defendants. | Case No:<br><br><u>CLASS ACTION</u><br>**JURY TRIAL DEMANDED**<br><br><br>**<u>COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS</u>** |

Plaintiff Sarah Moleski, individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other

matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Tangoe, Inc. ("Tangoe" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities, other than Defendants (defined below) and their affiliates, who purchased the publicly traded Tangoe securities from March, 18, 2014 through March 7, 2016, both dates inclusive ("Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      During the Class Period, Tangoe failed to disclose that Defendants were manipulating the Company's financial statements and lacked any internal controls rendering their publically made statements materially false and/or misleading.

## JURISDICTION AND VENUE

3.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

4.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

5.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District and Tangoe conducts business and has an office in this District.

6.     In connection with the acts, conduct and other wrongs alleged herein, Defendants either directly or indirectly used the means and instrumentalities of interstate commerce, including but not limited to the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

7.     Plaintiff Sarah Moleski, as set forth in the attached PSLRA Certification, acquired Tangoe securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

3

8.     Defendant Tangoe is a Delaware corporation headquartered in Orange, Connecticut. Tangoe has offices at 20 Waterview Blvd., 3rd Floor, Parsippany, New Jersey 07054. Tangoe securities trade on NASDAQ under the ticker symbol "TNGO."

9.     Defendant Albert R. Subbloie ("Subbloie") has been the Chief Executive Officer ("CEO") and President of Tangoe during the Class Period.

10.     Defendant Gary R. Martino ("Martino") has been Tangoe's and Chief Financial Officer ("CFO") during the Class Period.

11.     Collectively, Defendants Subbloie and Martino are herein referred to as "Individual Defendants."

12.     Collectively, Defendant Tangoe and Individual Defendants are herein referred to as "Defendants."

13.     Each of the Individual Defendants:

    a.  directly participated in the management of the Company;

    b.  was directly involved in the day-to-day operations of the Company at the highest levels;

    c.  was privy to confidential proprietary information concerning the Company and its business and operations;

4

d.  was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e.  was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

f.  was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

g.  approved or ratified these statements in violation of the federal securities laws.

14.  Tangoe is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

15.  The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Tangoe under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Background

16.   Tangoe is a leading global provider of IT Expense Management software and services. Tangoe provides connection lifecycle management ("CLM") software and services to a wide range of global enterprises and service providers. CLM covers the entire spectrum of an enterprise's connection-based assets and services, such as voice and data services, mobile devices and usage, cloud software, infrastructure and services, machine-to-machine connections, enterprise social and information technology connections, and encompasses the entire lifecycle of these assets and services, including planning and sourcing, procurement and provisioning, inventory and usage management, mobile device management, real-time telecommunications expense management, invoice processing and payment, expense allocation and accounting, and asset decommissioning and disposal.

17.   Tangoe's technology and services platform, The Matrix, is designed to help companies transform the management of IT assets, services, expenses, and usage to create business value, increase efficiency, and deliver a positive impact on the bottom line.

## <u>Defendants' False and Misleading Class Period Statements</u>

18.     After market closed on March 17, 2014, the Company filed a Form 10-K for the year ending December 31, 2013 (the "2013 10-K") with the SEC, which contained the Company's financial results for the year ending December 31, 2013. The 2013 10-K was signed by Defendants Subbloie and Martino.

19.     Attached to the 2013 10-K were Sarbanes-Oxley Act of 2002 ("SOX") certifications signed by Defendants Subbloie and Martino attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

20.     The 2013 10-K discussed the Company's internal controls. Under the heading "Management's Annual Report on Internal Control over Financial Reporting," the 2013 10-K stated in relevant part:

> Our management evaluated the effectiveness of our internal control over financial reporting as of December 31, 2013. In conducting this evaluation, our management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control—Integrated Framework (1992). ***Based on its evaluation, our management concluded that, as of December 31, 2013, our internal control over financial reporting was effective based on those criteria.***
>
> The effectiveness of our internal control over financial reporting as of December 31, 2013 has been audited by BDO USA, LLP, our independent registered public accounting firm, which is stated in their report included in Part II, Item 8 of this Annual Report.
>
> (Emphasis added).

21.     After market closed on March 16, 2015, the Company filed a Form 10-K for the year ending December 31, 2014 (the "2014 10-K") with the SEC, which contained the Company's financial results for the year ending December 31, 2014. The 2014 10-K was signed by Defendants Subbloie and Martino.

22.     Attached to the 2014 10-K were SOX certifications signed by Defendants Subbloie and Martino attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

23.     The 2014 10-K discussed the Company's internal controls. Under the heading "Management's Annual Report on Internal Control over Financial Reporting", the 2014 10-K stated in relevant part:

> Our management evaluated the effectiveness of our internal control over financial reporting as of December 31, 2014. In conducting this evaluation, our management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in Internal Control—Integrated Framework (2013). ***Based on its evaluation, our management concluded that, as of December 31, 2014, our internal control over financial reporting was effective based on those criteria.***
>
> The effectiveness of our internal control over financial reporting as of December 31, 2014 has been audited by BDO USA, LLP, our independent registered public accounting firm, which is stated in their report included in Part II, Item 8 of this Annual Report.

 (Emphasis added).

24.     After market close on May 11, 2015, the Company filed a Form 10-Q for the quarter ending March 31, 2015 (the "1Q15 10-Q") with the SEC, which

contained the Company's financial results for the quarter ending March 31, 2015. The 1Q15 10-Q was signed by Defendant Martino.

25.     Attached to the 1Q15 10-Q were SOX certifications signed by Defendants Subbloie and Martino attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

26.     The 1Q15 10-Q discussed the Company's internal controls, stating in relevant part:

*Evaluation of Disclosure Controls and Procedures*

\*     \*     \*

Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures as of March 31, 2015, the end of the period covered by this Quarterly Report on Form 10-Q. Based upon such evaluation, ***our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures were effective at the reasonable assurance level as of such date.***

*Changes in Internal Controls*

***There was no change in our internal control over financial reporting that occurred during the period covered by this Quarterly Report on Form 10-Q that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.***

(Emphasis added).

27.     After market closed on August 10, 2015, the Company filed a Form 10-Q for the quarter ending June 30, 2015 (the "2Q15 10-Q") with the SEC, which

contained the Company's financial results for the quarter ending June 30, 2015. The 2Q15 10-Q was signed by Defendant Martino.

28.    Attached to the 2Q15 10-Q were SOX certifications signed by Defendants Subbloie and Martino attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

29.    The 2Q15 10-Q discussed the Company's internal controls, stating in relevant part:

> ***Evaluation of Disclosure Controls and Procedures***
>
> *       *       *
>
> Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures as of June 30, 2015, the end of the period covered by this Quarterly Report on Form 10-Q. Based upon such evaluation, ***our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures were effective at the reasonable assurance level as of such date.***
>
> ***Changes in Internal Controls***
>
> ***There was no change in our internal control over financial reporting that occurred during the period covered by this Quarterly Report on Form 10-Q that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.***

(Emphasis added).

30.    After market closed on November 9, 2015, the Company filed a Form 10-Q for the quarter ending September 30, 2015 (the "3Q15 10-Q") with the SEC,

which contained the Company's financial results for the quarter ending September 30, 2015. The 3Q15 10-Q was signed by Defendant Martino.

31.    Attached to the 3Q15 10-Q were SOX certifications signed by Defendants Subbloie and Martino attesting to the accuracy of the financial statements, effectiveness of internal controls, and that all fraud was disclosed.

32.    The 3Q15 10-Q discussed the Company's internal controls, stating in relevant part:

> ***Evaluation of Disclosure Controls and Procedures***
>
> *      *      *
>
> Our management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures as of September 30, 2015, the end of the period covered by this Quarterly Report on Form 10-Q. Based upon such evaluation, ***our Chief Executive Officer and Chief Financial Officer have concluded that our disclosure controls and procedures were effective at the reasonable assurance level as of such date.***
>
> ***Changes in Internal Controls***
>
> ***There was no change in our internal control over financial reporting that occurred during the period covered by this Quarterly Report on Form 10-Q that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.***
>
> (Emphasis added).

33.    The statement referenced in ¶¶18-32 above were materially false and/or misleading because they misinterpreted and failed to disclose the following

adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Defendants made errors in recognizing revenue; (2) Tangoe's financial results were overstated; and (3) as a result, Defendants' statements about the Tangoe's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

## **THE TRUTH EMERGES**

34.    After market closed on March 7, 2016, the Company issued a press release entitled, "Tangoe Announces That It Will Restate Financial Statements." The press release stated in relevant part:

> ORANGE, Conn.--(BUSINESS WIRE)--Tangoe, Inc. (NASDAQ:TNGO) ("Tangoe" or the "Company"), a leading global provider of IT Expense Management (ITEM) software and related services, today announced that ***the Company will restate its financial statements for the years 2013 and 2014, all quarters therein, and the first 3 quarters of 2015. This decision was approved by the Company's Board of Directors, upon the recommendation of the Company's Audit Committee***. Tangoe does not expect to file its annual report on Form 10-K with the SEC as scheduled on March 15, 2016.
>
> Investors should no longer rely upon the Company's previously released financial statements for the time periods cited above. In addition, investors should no longer rely upon earnings releases for these periods; reports by BDO USA, LLP – the Company's independent registered public accounting firm ("BDO") – on such

financial statements, including its reports on the Company's internal controls over financial reporting; and other communications relating to these financial statements. The Company is withdrawing all prior financial guidance for the fourth quarter 2015 and related full year 2015.

The decision to restate these financial statements is based on the Company's conclusion that it made errors in recognizing revenue, primarily from business activities that are ancillary to the Company's core business. A majority of the errors relate to non-recurring revenue, including, for example, non-recurring revenue from strategic consulting and bill audit services with contingent fee arrangements. As a result of these corrections, the Company is revising its revenue recognition policies for several categories of revenue. These revisions will better assure that revenue is recognized only when it is fixed or determinable, and when it is consistent with a variety of contract terms, in circumstances that otherwise require complex estimates, analysis or judgments. In some cases, the revisions will result in revenue recognition later in time, sometimes upon collection, as in those cases collectability is not reasonably assured prior to collection.

In summary, for the full periods being restated, the Company currently estimates at least $17.1 million of previously recognized revenue will be affected, against total revenue under review of approximately $70 million and previously reported total revenue of $565.9 million.

- For 2013, the Company currently estimates that at least $3.4 million of previously recognized revenue will be affected, against total revenues under review during this period of approximately $17 million and previously reported total revenue of $188.9 million

- For 2014, the Company currently estimates that at least $9.4 million of previously recognized revenue will be affected, against total revenues under review during this period of approximately $28 million and previously reported total revenue of $212.5 million

- For the first three quarters of 2015, the Company currently estimates that at least $4.3 million of previously recognized revenue will be affected, against total revenues under review during this period of approximately $25 million and previously reported total revenue of $164.5 million

The Company expects that the overall impact on topline revenues will be as described above, and operating income will be adjusted substantially in line with revenue adjustments. The Company also expects that the impact, if any, on operating cash flow for the periods under review will be minimal.

Although the Company cannot at this time estimate when it will complete the restatement and file its restated financial statements and its Form 10-K for the year ended December 31, 2015, it is diligently pursuing completion of the restatement and intends to file the Form 10-K as soon as reasonably practicable.

Because the Company has not yet fully completed its review, the expected financial impact of the restatement described above is preliminary and subject to change. There can be no assurance that the final reported adjustments will not differ materially from the estimated amounts discussed in this press release, or that additional adjustments will not be identified.

The audit committee and management have discussed the matters disclosed in this press release with BDO USA, LLP, the Company's independent registered public accounting firm.

(Emphasis added).

35.    Further, after market closed on March 7, 2016, the Company also filed a Form 8-K with the SEC disclosing the consolidated financial statements of the fiscal years ending December 31, 2013 and 2014, as well as the quarters ended March 31, 2015, June 30, 2015, and September 30, 2015 should no longer be relied upon. The 8-K stated in relevant part:

**Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review**

On March 4, 2016, the Board of Directors of Tangoe, Inc. (the "Company"), upon the recommendation of the Company's Audit Committee, ***determined that the Company will restate its financial statements for the years 2013 and 2014, all quarters therein, and the first three quarters of 2015. Accordingly, investors should no longer rely upon the Company's previously released financial statements for the time periods cited above.*** In addition, investors should no longer rely upon earnings releases for these periods; reports by BDO USA, LLP ("BDO"), the Company's independent registered public accounting firm, on such financial statements, including its reports on the Company's internal control over financial reporting; and other communications relating to these financial statements. The Company is withdrawing all prior financial guidance for the fourth quarter 2015 and related full year 2015.

The Company has concluded that it made errors in recognizing revenue, primarily from business activities that are ancillary to the Company's core business. A majority of the errors relate to non-recurring revenue, including, for example, non-recurring revenue from strategic consulting and bill audit services with contingent fee arrangements. As a result of these corrections, the Company is revising its revenue recognition policies for several categories of revenue. For the full periods being restated, the Company estimates that at least $17.1 million of previously recognized revenue will be affected, against total revenue under review of approximately $70 million and previously reported total revenue of $565.9 million.

The Company expects that the overall impact on revenue will be as described above, and operating income will be adjusted substantially in line with revenue adjustments. The Company also expects that the impact, if any, on operating cash flow for the periods under review will be minimal. Because the Company has not yet fully completed its review, the expected financial impact of the restatement described above is preliminary and subject to change.

The Company does not expect to file its Annual Report on Form 10-K with the SEC as scheduled on March 15, 2016. Although the Company cannot at this time estimate when it will complete the restatement and file its restated financial statements and its Form 10-K for the year ended December 31, 2015, it is diligently pursuing completion of the restatement and intends to file the Form 10-K as soon as reasonably practicable.

The audit committee and management have discussed the matters disclosed in this filing with BDO.

36.     On this news, shares of Tangoe fell $0.70 per share or over 9% from its previous closing price to close at $7.75 per share on March 8, 2016, damaging investors.

## PLAINTIFF' CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Tangoe securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

38.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Tangoe securities were actively traded on NASDAQ. While the exact number of Class members is

unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Tangoe or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

39.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

40.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

41.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.    whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.      whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Tangoe;

c.      whether the Individual Defendants caused Tangoe to issue false and misleading financial statements during the Class Period;

d.      whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

e.      whether the prices of Tangoe securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

f.      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

42.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. There will be no difficulty in the management of this action as a class action.

43.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      the omissions and misrepresentations were material;

c.      Tangoe securities are traded in an efficient market;

d.      the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

e.      the Company traded on the NASDAQ and was covered by multiple analysts;

f.      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

g.      Plaintiff and members of the Class purchased, acquired and/or sold Tangoe securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

44.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

45.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972),

as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## FIRST CAUSE OF ACTION

### Violation of Section 10(b) of The Exchange Act Against and Rule 10b-5 Promulgated Thereunder Against All Defendants

46.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

47.     This cause of action is asserted against all Defendants.

48.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase and/or sell Tangoe's securities at artificially inflated and distorted prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, individually and as a group, took the actions set forth herein.

49.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Tangoe as specified herein.

50.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Tangoe's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Tangoe and its business operations and financial condition in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers Tangoe securities during the Class Period.

51.     Each of the Defendants' primary liability, and controlling person liability, arises from the following: (a) Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (b) by virtue of their responsibilities and activities as senior officers and/or directors of the Company, were privy to and participated in the creation, development and reporting of the Company's  plans, projections and/or reports; (c) Defendants enjoyed significant personal contact and familiarity with the other members of the Company's management team, internal reports and other data and information about the

Company's, operations, and (d) Defendants were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

52.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Tangoe's financial condition from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' false and misleading statements during the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by failing to take steps necessary to discover whether those statements were false or misleading.

53.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price for Tangoe's securities was artificially inflated during the Class Period.

54.    In ignorance of the fact that market prices of Tangoe's publicly-traded securities were artificially inflated or distorted, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of

the market in which the Company's securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Tangoe's securities during the Class Period at artificially high prices and were damaged thereby.

55.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Tangoe's financial results and condition, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired Tangoe securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices or distorted prices at which they did.

56.     By virtue of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

57.     As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

58.    This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchases of securities giving rise to the cause of action.

## SECOND CAUSE OF ACTION

### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

59.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.    This second cause of action is asserted against each of the Individual Defendants.

61.    The Individual Defendants acted as controlling persons of Tangoe within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of aspects of the Company's dissemination of information to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading

prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

62.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

63.     As set forth above, Tangoe and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

64.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act as they culpably participated in the fraud alleged herein. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

65.     This action was filed within two years of discovery of the fraud and within five years of Plaintiff' purchases of securities giving rise to the cause of action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a.     Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Class Counsel;

b.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.     Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 24, 2016                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Laurence M. Rosen
Laurence M. Rosen, Esq.
609 W. South Orange Avenue, Suite 2P
South Orange, NJ 07079
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

Counsel for Plaintiff