**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **IN RE TANGOE, INC., SECURITIES LITIGATION** | : <br> : <br> :   **Civil Action No.: 3:17-cv-00146-VLB** <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION**

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ...........................................................................1

II.  HISTORY AND BACKGROUND OF THE ACTION ...................................3

III. THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET ...............3

IV. THE COURT SHOULD APPROVE THE SETTLEMENT AS FAIR, . REASONABLE AND ADEQUATE ..............................................................4

   A. The Law Favors and Encourages Settlement as a Method for Resolving Legal Disputes ...................................................................4

   B. The Settlement Is Procedurally Fair ..................................................6

   C. Second Circuit Standards Governing the Substantive Fairness of Class Settlements .....................................................................7

   D. The Settlement Satisfies The Second Circuit Criteria For Approval ..............8

      1. The Complexity, Expense and Likely Duration of the Litigation Justify the Proposed Settlement ....................................8

      2. The Reaction of the Class to the Settlement .............................10

      3. The Stage of the Proceedings and Discovery Completed .................11

      4. The Risk of Establishing Liability ............................................12

      5. The Considerable Risk of Establishing Damages ........................15

      6. The Risks of Maintaining this Class Action Through Trial (If Possible) ......17

      7. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation .......................18

      8. The Ability of the Defendants to Withstand a Greater Judgment .................19

V.  THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT ...........................20

VI. CONCLUSION .............................................................................22

i

## TABLE OF AUTHORITIES

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
  269 F.R.D. 252 (S.D.N.Y. 2010) ..................................................................... 4

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ......................................................................................... 4

*Beecher v. Able*,
  575 F.2d 1010 (2d Cir. 1978) ....................................................................... 20

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  No. 07 CIV 2207 JGK, 2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .......... 4, 7, 13, 17

*Carpe v. Aquila, Inc.*,
  No. 02-0388-CV-W,-FJG, 2005 WL 1138833 (W.D. Mo. Mar. 23, 2005) .................. 16

*Chin v. RCN Corp.*,
  No. 08 CIV 7349 RJS KNF, 2010 WL 3958794 (S.D.N.Y. Sept. 8, 2010) ................... 7

*Collins v. Olin Corp.*,
  No. 303-CV-945CFD, 2010 WL 1677764 (D. Conn. Apr. 21, 2010) .............. 5, 19, 20

*Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .................................................... 7, 11, 21

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ........................................................................ 6, 11

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .................................................................. 5, 7, 13, 19

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) .................................................................................. 15, 21

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
  343 F.3d 189 (2d Cir. 2003) ........................................................................ 14

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ....................................................................................... 13

*Hicks v. Stanley*,
  No. 01 CIV 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ..................... 9

ii

*In re Agent Orange Prod. Liab. Litig.,*
    597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................ 18

*In re Alloy, Inc. Sec. Litig.,*
    No. 03 CIV.1597(WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ........................ 6

*In re Am. Bank Note Holographics, Inc.,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) .................................................................... 12

*In re AOL Time Warner, Inc.,*
    No. 02 CIV 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................. 14, 19

*In re Austrian & German Bank Holocaust Litig.,*
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................. 11, 13

*In re Cendant Corp. Litig.,*
    264 F.3d 201 (3d Cir. 2001) .................................................................................. 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
    No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)............passim

*In re Holocaust Victim Assets Litig.,*
    413 F.3d 183 (2d Cir. 2005) .................................................................................. 21

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* No. 02,
    MDL 1484JFK, 2007 WL 4526593 (S.D.N.Y. Dec. 20, 2007) .................................... 7

*In re Indep. Energy Holdings PLC,*
    No. 00 CIV 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ........... 15, 18

*In re Luxottica Grp. S.p.A. Sec. Litig.,*
    233 F.R.D. 306 (E.D.N.Y. 2006) ................................................................. 5, 6, 7, 10

*In re NASDAQ Mkt.-Makers Antitrust Litig.,*
    187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................. 17

*In re PaineWebber Ltd. P'ships Litig.,*
    171 F.R.D. 104 (S.D.N.Y.) ...............................................................................passim

*In re Sony SXRD Rear Projection Television Class Action Litig.,*
    No. 06 CIV 5173 (RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008) ........................ 9

*In re Top Tankers, Inc. Sec. Litig.,*
    No. 06 CIV 13761 (CM), 2008 WL 2944620 (S.D.N.Y. July 31, 2008).................... 13

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ............. passim

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F. Supp. 2d 503 (E.D.N.Y. 2003) ...................................................................... 20

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) .................................................................................... 19

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985)........................................................................... 17

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................................... 20

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ...................................................................................... 4

*Kaufman v. Motorola, Inc.*,
   No. 95 C 1069, 2000 WL 1506892 (N.D. Ill. Sept. 21, 2000) .................................... 16

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................... 19, 20, 22

*Menkes v. Stolt-Nielsen S.A.*,
   No. 3:03CV00409(DJS), 2011 WL 13234815 (D. Conn. Jan. 25, 2011) ........... 4, 5, 6

*Milstein v. Huck*,
   600 F. Supp. 254 (E.D.N.Y. 1984)............................................................................. 8

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ................................................................................. 5, 18

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) .................................................................................... 13

*O'Connor v. AR Res., Inc.*,
   No. 3:08CV1703 VLB, 2012 WL 12743 (D. Conn. Jan. 4, 2012) ..................... passim

*Plummer v. Chem. Bank*,
   668 F.2d 654 (2d Cir. 1982) .................................................................................... 11

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) .................................................................... 8, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007)............................................................................... 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
  396 F.3d 96 (2d Cir. 2005) ........................................................... 4, 18, 20

*Weinberger v. Kendrick,*
  698 F.2d 61 (2d Cir. 1982) ........................................................................ 5

*Whalen v. Hibernia Foods PLC,*
  No. 04 CIV.3182, 2005 WL 1799370 (S.D.N.Y. Aug. 1, 2005)................... 13

*Wright v. Stern,*
  553 F. Supp. 2d 337 (S.D.N.Y. 2008) ..................................................... 4, 5

## Rules

Fed. R. Civ. P. 23(a) .................................................................................... 2

Fed. R. Civ. P. 30(a)(2)(A)(i) ....................................................................... 8

## Other Authorities

4 Alba Conte, Herbert B. Newberg,
  *Newberg on Class Actions* §11.45 (4th ed. 2002) ................................... 11

Ellen M. Ryan, Laura E. Simmons,
  *Securities Class Action Settlements: 2011 Review and Analysis* (Cornerstone
  Research 2012)......................................................................................... 18

Pursuant to Rules 23(b)(3) and (e) of the Federal Rules of Civil Procedure, Lead Plaintiff James Alpha Multi Strategy Alternative Income Portfolio, by and through its counsel ("Lead Counsel"), respectfully moves this Court for a final order, approving the proposed settlement of the above-captioned class action (the "Action"), certifying the Class for settlement purposes only, and approving the proposed Plan of Allocation of settlement proceeds.[1]

## I.    PRELIMINARY STATEMENT

Under the terms of the proposed settlement ("Settlement"), as set forth in the Stipulation, $2,550,000.00 (Two Million, Five Hundred and Fifty Thousand Dollars) in cash (the "Settlement Amount") was paid into an interest-bearing escrow account on behalf of the Class, in exchange for the dismissal of all claims brought against the Defendants in this Action and a full release of claims. The Settlement Fund (the Settlement Amount plus all interest earned thereon) will be distributed to Class Members who are not otherwise excluded and who timely submit valid Proof of Claim and Release forms to the Claims Administrator ("Authorized Claimants"), after the payment of taxes, notice and administrative costs, and attorneys' fees and expenses ("Net Settlement Fund"). Each Authorized Claimant will be allocated a percentage of the Net Settlement Fund based upon the relationship each Authorized Claimant's claim bears to the total of all Authorized Claimants' claims, as explained in the Notice of Pendency of Proposed Settlement of Class Action ("Long Notice")

---

[1] Unless otherwise defined herein, capitalized terms have the meaning ascribed to them in the parties' Stipulation of Settlement filed on October 3, 2017 ("Stipulation") (ECF No. 59-2).

that this Court approved by Order dated November 13, 2017 ("Preliminary Approval Order) (ECF No. 64).

Lead Counsel respectfully submit that the Settlement is a fair, reasonable and adequate financial recovery for the Class under the circumstances, given the many serious risks to recovery. At the direction of Lead Plaintiff, Lead Counsel settled the case after thorough investigation of all claims and arms-length negotiations with the assistance of an experienced mediator. When viewed in light of the risks that Defendants could defeat Lead Plaintiff's claims on a motion to dismiss, or at class certification, summary judgment or trial, based on defenses to materiality, scienter, reliance, and/or loss causation, the Settlement represents a substantial recovery for the Class. As discussed below and in the Joint Declaration of Jacob A. Goldberg and Jeffrey R. Krinsk in Support of Lead Plaintiff's Motion for (1) Final Approval of Settlement and Plan of Allocation of Settlement Proceeds, and (2) Award of Attorneys' Fees and Expenses, Reimbursement of Expenses, and Award to Lead Plaintiff ("Joint Decl." or "Joint Declaration"), when measured against the benefit of the Settlement, the significant risks involved in litigating this case further, strongly support approval of the Settlement.

Lead Counsel have assessed the strengths and weaknesses of the claims and defenses asserted, and the considerable risks and delays associated with continued litigation and trial.  Based on this extensive investigation, Lead Plaintiff and Lead Counsel believe that the Settlement is fair, reasonable, and adequate. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement.  In addition, the proposed Class satisfies all elements of Fed. R.

Civ. P. 23(a) and (b)(3). Therefore, the Court should grant final certification of the Class for settlement purposes only.

Finally, the Court should approve the Plan of Allocation that Lead Counsel developed with the assistance of their damages consultant as a reasonable method for distributing the Net Settlement Fund to Class Members.

## II.   HISTORY AND BACKGROUND OF THE ACTION

Lead Plaintiff refers the Court to the accompanying Joint Declaration for a full discussion of, *inter alia,* the factual background and procedural history of the Action, the litigation efforts of Lead Counsel, the serious risks to Class Members of continued litigation, and a discussion of the arms-length negotiations leading to this Settlement. Joint Decl. ¶¶23-47.

## III.   THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET

Lead Plaintiff requests that this Court finally approve certification of the Class for settlement purpose only. The Court preliminarily certified the Class in the Preliminary Approval Order. (ECF No. 64, ¶¶ 2-4). The Parties stipulate to certification of the Class for settlement purposes only. Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 59) discussed fully the reasons the Court should certify the Class. The reasons that supported preliminary certification of a Settlement Class and on which this Court relied in preliminarily certifying the Class in this case remain unchanged. The ultimate decision regarding certification rests with the Court, and courts have recognized that Rule 23's

3

requirements are to be liberally construed. *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.,* 269 F.R.D. 252, 254 (S.D.N.Y. 2010). Because the Class meets all of the requirements for certification in the settlement context, and in light of the substantial benefits the Settlement confers on the Class, Lead Plaintiff requests that the Court finally certify the Class for Settlement purposes.[2]

## IV.   THE COURT SHOULD APPROVE THE SETTLEMENT AS FAIR, REASONABLE AND ADEQUATE

### A. The Law Favors and Encourages Settlement as a Method for Resolving Legal Disputes

Rule 23(e) requires that courts approve any class action settlement. Courts routinely approve settlements that bind classes, following notice, so long as they determine that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000); *Bellifemine v. Sanofi-Aventis U.S. LLC,* No. 07 CIV. 2207 JGK, 2010 WL 3119374, at *2 (S.D.N.Y. Aug. 6, 2010). *See also Menkes v. Stolt-Nielsen S.A.,* No. 3:03CV00409(DJS), 2011 WL 13234815, at *2 (D. Conn. Jan. 25, 2011). Courts consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008); *O'Connor v. AR Res., Inc.,* No. 3:08CV1703 VLB, 2012 WL 12743, at *4 (D. Conn. Jan. 4, 2012). While the decision to grant or deny approval of a

---

[2] The use of a settlement class allows the parties to concede the propriety of a class action for settlement purposes. The Supreme Court has expressly approved of the use of this device. *Amchem Prods. v. Windsor,* 521 U.S. 591, 620-621 (1997).

settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially in the class action context. *Wright*, 553 F. Supp. 2d at 344; *Collins v. Olin Corp.*, No. 303-CV-945CFD, 2010 WL 1677764, at *2 (D. Conn. Apr. 21, 2010); *see also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (settlement of complex class actions are favored). Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger*, 698 F.2d at 73 ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Recognizing that a settlement represents the negotiating parties' exercise of their independent judgment, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.,* 495 F.2d 448, 462 (2d Cir. 1974); *Menkes*, 2011 WL 13234815, at *2 -*3. As the Second Circuit has stated in the class settlement context, ". . . since the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial." *Newman v. Stein*, 464 F.2d 689, 691–92 (2d Cir. 1972) (internal punctuation and citation omitted).

B. __The Settlement Is Procedurally Fair__

A presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *Menkes*, 2011 WL 13234815, at *2; *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *14 (S.D.N.Y. Nov. 8, 2010) ; *Luxottica Group,* 233 F.R.D. at 315; *In re Alloy, Inc. Sec. Litig.*, No. 03 CIV.1597(WHP), 2004 WL 2750089, at *1–*2 (S.D.N.Y. Dec. 2, 2004). Negotiation processes are presumed fair where a court finds that "the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd,* 117 F.3d 721 (2d Cir. 1997).This presumption of fairness and adequacy applies here because the Settlement was reached by experienced, informed counsel after arm's-length negotiations, with the assistance of Jed D. Melnick, Esq. of JAMS serving as mediator. *See* Joint Decl. at ¶¶40-47; *see also Flag Telecom,* 2010 WL 4537550, at *14. In addition, no question exists that Lead Counsel, equipped with knowledge from a thorough investigation and evaluation of Lead Plaintiff's and the Class's claims were well informed of the strengths and weaknesses of the

6

case by the time of the mediation and Settlement. Thus, the Settlement is entitled to the presumption of procedural fairness.

### C. Second Circuit Standards Governing the Substantive Fairness of Class Settlements

Courts within the Second Circuit observe the universal standard for determining whether a proposed class settlement is substantively fair: whether the proposed settlement is "'fair, reasonable, and adequate.'" *Luxottica Group*, 233 F.R.D. at 310 (citation omitted). The Second Circuit has identified nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted). *See also O'Connor*, 2012 WL 12743, at *3. Lead Plaintiff need not satisfy all nine factors. Instead, this Court will look at the totality of these factors in light of the specific circumstances of the Action and the Settlement. *Flag Telecom*, 2010 WL 4537550, at *15; *Chin v. RCN Corp.*, No. 08 CIV 7349 RJS KNF, 2010 WL 3958794, at *3 (S.D.N.Y. Sept. 8, 2010) ; *Bellifemine*, 2010 WL 3119374, at *2; *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, No. 02 MDL 1484JFK, 2007 WL 4526593, at *9–90 (S.D.N.Y. Dec. 20, 2007); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004).

7

The Settlement satisfies each of the Second Circuit's nine relevant criteria. Indeed, relative to average securities fraud class action settlements, this Settlement represents a very good recovery for the Class, and, in the judgment of Lead Counsel, serious risks clouded the prospects for a more favorable result. Accordingly, upon examining the nine factors, this Court will approve the Settlement.

### D.  The Settlement Satisfies The Second Circuit Criteria For Approval

#### 1.  The Complexity, Expense and Likely Duration of the Litigation Justify the Proposed Settlement

"The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement" *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). Courts have recognized that "[s]ecurities class actions are generally complex and expensive to prosecute." *Flag Telecom,* 2010 WL 4537550, at *15 (citation omitted); *See also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (continued litigation in securities fraud class action "would be complex, lengthy, and expensive, with no guarantee of recovery by the class members") (citation omitted). Here, Lead Plaintiff's securities fraud claims on behalf of the Class involve complex legal and factual issues relating to, among other things, Tangoe's operations, accounting systems, and financial statement preparation, requiring substantial discovery, including voluminous document production and review, depositions in excess of Fed. R. Civ. P. 30(a)(2)(A)(i)'s limitation, and expert discovery and testimony to explain the accounting principles and alleged violations of those principles to the finder of

fact. In addition, the legal issues in this Action are equally complex — proving materiality, scienter, causation, and damages — requiring expert testimony.

In addition to uncertainty of outcome, the Settlement at this time spares the Class and Defendants the delay and expense of protracted litigation, sparing material hours of the Court's time and resources. Even if the Class could recover a judgment larger than the Settlement Amount after a trial, the additional delay through trial, post-trial motions, and appeal could deny the Class any recovery for years, further reducing its value. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008) *("Sony"); Strougo,* 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

The $2,550,000 Settlement at this juncture results in an immediate and substantial recovery for the Class, eliminating material risk, expense, and delay of extensive motion practice, trial and appeal(s). This factor weighs heavily in favor of the proposed Settlement.

2.  <u>The Reaction of the Class to the Settlement</u>

The reaction of the class to the settlement is a significant factor in assessing its fairness and adequacy, and "the absence of objectants may itself be taken as evidencing the fairness of a settlement." *PaineWebber,* 171 F.R.D. at 126 (citation omitted); *see also Luxottica Group,* 233 F.R.D. at 311-12.  This Court has noted that the reaction of the class to a settlement "is perhaps the most significant factor to be weighed in considering its adequacy." *O'Connor*, 2012 WL 12743, at *4. Here, Lead Plaintiff has participated throughout the prosecution of the litigation, approving the Settlement amount and conditions. In addition, the Claims Administrator sent the Court-approved Notice to 26,011 potential Class Members[3] and transmitted the Court-approved Summary Notice widely. See Declaration of Sarah Evans Concerning the Mailing of the Postcard Notice of Pendency and Proposed Settlement of Class Action ("Evans Decl.") attached as Exhibit 1 to the Joint Declaration, ¶¶6, 10. In response, no member of the Class has objected to the Settlement or otherwise sought to exclude herself, himself, or itself. Evans Decl. ¶¶12-13. This is significant, as the Class contains numerous large shareholders with the incentive to object if they thought it was necessary to do so.[4]

---

[3] Out of the 26,011 Notices mailed, 17,587 were Postcard Notices (103 Postcard Notices directly sent to individuals and organizations from the shareholders' list provided by the transfer agent and 17,484 Postcard Notices requested by, and provided to the Nominee Account Holders and Institutional Groups) and 8,424 Long Notices and Claim Forms were requested by, and provided to the Nominee Account Holders and Institutional Groups. *See* Evans Decl. ¶6.

[4] The deadline for Class members to object to the Settlement is February 15, 2018. If timely objections are filed, Lead Counsel will address those in a response brief to be filed on or before March 1, 2018.

### 3.  The Stage of the Proceedings and Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . . At minimum, the court must possess sufficient information to raise its decision above mere conjecture." 4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45, at 127, 128 (4th ed. 2002). As previously noted, "formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *Global Crossing,* 225 F.R.D. at 458. *See also In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (not necessary for court to find parties engaged in extensive discovery; must merely find that they engaged in sufficient investigation to enable court to make intelligent appraisal of case) (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)), *aff'd sub nom.*; *D'Amato*, 236 F.3d 78; *O'Connor*, 2012 WL 12743, at *4; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007) ("[T]he parties need not have engaged in full discovery for a settlement to be approved as fair.").[5]

Here, Lead Counsel negotiated a substantial settlement only after conducting a thorough factual investigation and analysis of the Complaint's allegations.  Despite the statutory discovery stay that remains in place, Lead Counsel had a great deal of information available to them by the time the Settlement was reached. Lead Counsel

---

[5] In cases such as this one brought under the PSLRA, discovery cannot proceed unless and until a motion to dismiss is denied.

reviewed publicly available documents to gain a full and complete understanding of Tangoe's business, operations and accounting policies. Lead Counsel's investigators interviewed former Tangoe employees regarding Lead Plaintiff's allegations. Lead Counsel researched the applicable law with respect to Lead Plaintiff's claims and the Defendants' potential defenses in connection with preparing a final draft of Lead Plaintiff's First Amended Complaint. Joint Decl. ¶¶9, 62. Lead Plaintiff consulted with an expert in accounting principles and their application with respect to the limited public information about Defendants' alleged wrongdoing.

Lead counsel also consulted with economists who provided advice and assistance on issues relating to damages, causation, and materiality.  In advance of mediation, Lead Counsel prepared a detailed mediation statement outlining the factual and legal issues to be adjudicated in this case. Joint Decl. ¶¶9, 43, 58. Thus, Lead Counsel had a clear picture of the strengths and weaknesses of this case, and of the legal and factual defenses that Defendants would likely raise on a motion to dismiss, as well as at class certification, summary judgment and trial. *O'Connor*, 2012 WL 12743, at *4. As such, Lead Counsel had sufficient information to negotiate the terms of this Settlement intelligently. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001). Therefore, the Court should find that this factor also supports the Settlement.

### 4.  The Risk of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the

continuing risks of litigation. *See Grinnell,* 495 F.2d at 463; *Bellifemine*, 2010 WL 3119374, at *4; *Veeco*, 2007 WL 4115809, at *8; *Austrian & German Bank,* 80 F. Supp. 2d at 177.  While Lead Counsel believe that Lead Plaintiff's claims are valid, it is also clear that success is not assured. This Settlement is undoubtedly fair, adequate, and reasonable when viewed in light of the substantial risks to successfully pleading and proving Defendants' liability. *See In re Top Tankers, Inc. Sec. Litig.*, No. 06 CIV. 13761 (CM), 2008 WL 2944620, at *4 (S.D.N.Y. July 31, 2008) ("Courts routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.").

Lead Plaintiff and the Class faced numerous hurdles to establishing liability. This Action involves claims for relief under the Securities Exchange Act of 1934. As a result, Lead Plaintiff would have to plead its claims with particularity, including particularized facts giving rise to a "strong inference" of Defendants' scienter. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). To prevail on its claims, Lead Plaintiff then must prove that Defendants made misstatements or omissions of material fact, with scienter, in connection with the sale or purchase of securities—and that Defendants intentionally engaged in this conduct for the purpose of misleading investors.  *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n.12 (1976).[6] Based on the defenses that Defendants raised in their

---

[6] Proof of scienter can be established "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Whalen v. Hibernia Foods PLC*, No. 04 CIV.3182, 2005 WL 1799370, at *2 (S.D.N.Y. Aug. 1, 2005) (citation omitted). Although recklessness has been held to satisfy the scienter requirement, *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000), this too is a difficult standard

confidential mediation statement, Lead Counsel and Lead Plaintiff recognize that establishing liability at trial would be fraught with risk of failing adequately to plead and to prove each element of a securities fraud claim. *See In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) ("The difficulty of establishing liability is a common risk of securities litigation.").

### a.  Defendants' Liability Defenses

Defendants would have argued in a motion to dismiss, that Lead Plaintiff had failed adequately to plead scienter – that the statements upon which Lead Plaintiff based its Complaint were not actionable because they were not aware of the alleged accounting problems until 2016, and not earlier. Defendants also contend that the alleged accounting misstatements were immaterial because they related only to an "ancillary" part of Tangoe's overall business.

By the time the parties agreed to the Settlement, Lead Counsel had concluded that certain of Defendants' scienter arguments were formidable both on a motion to dismiss and before a finder of fact, recommending the Settlement.

### b.  Defendants' Potential Loss Causation Defense

Even if Lead Plaintiff and the Class overcame Defendants' materiality and scienter defenses, Lead Plaintiff must also affirmatively prove loss causation. *See, e.g., Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 196–97 (2d Cir. 2003) (finding that plaintiffs adequately pleaded loss causation and proximate causation). Lead Plaintiff faced an uphill battle to prove loss causation, *i.e.,* that Defendants' fraud caused Lead Plaintiff and the Class to

14

suffer economic losses. Under the Supreme Court's holding in *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 338 (2005), a "private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss." Defendants viewed as one of their strongest defenses that Lead Plaintiff had not, and could not, properly account for the damages attributable to Defendants' alleged misrepresentations. Specifically, Defendants argued that Lead Plaintiff could not prove that Tangoe's stock price decline was caused by revelations of the alleged accounting violations at the Company.

While Lead Plaintiff remained confident in its ability to ultimately prove its claims and to counter any asserted affirmative defense, the risks of this Action being dismissed at the motion to dismiss stage, or at the summary judgment stage, or of losing at class certification or trial, weighed heavily against the concrete and substantial benefits of early settlement. Settlement is unquestionably in the Class's best interests in light of the above risks to recovery.

### 5. The Considerable Risk of Establishing Damages

Even if it successfully established liability, Lead Plaintiff also faces substantial risk in proving the existence and amount of damages. *See In re Indep. Energy Holdings PLC*, No. 00 CIV. 6689 (SAS), 2003 WL 22244676, at *3–*4 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving damages in securities cases); *Flag Telecom,* 2010 WL 4537550, at *18 (same). Lead Plaintiff must prove that the Defendants' false and misleading statements inflated the price of Tangoe stock, and also prove the amount of artificial inflation. Lead Counsel, with the assistance of their economic consultants, calculated the artificial inflation in the market price of Tangoe stock that is (in their opinion) attributable to the alleged wrongdoing. This

15

figure assumes that every element of the Class's damages theory is accepted by a jury as being correct and recoverable. As such, its viability as an actual calculation for damages could be affected by many factors that arise in the Action, such as Defendants' rebuttals and defenses to Lead Plaintiff's damage calculations and expert testimony.

The presentation of damages is a complex matter which would require the presentation of expert testimony. As a result, Lead Counsel already know that the Class will ultimately face a "battle of experts" — a battle in which no party is ever assured to prevail, and a battle which would undoubtedly arise at the class certification stage. While Lead Counsel believe that reliable and convincing expert testimony can be provided on the damages question, and that a judgment could ultimately be obtained for the full amount of damages available under the law, meaningful obstacles remain.

First, the Court would have to determine that Lead Plaintiff's damages model is admissible — and only then would a jury determine whether Lead Plaintiff's or Defendants' model is more accurate. The Class is by no means assured of a ruling in their favor. *See, e.g.*, *Carpe v. Aquila, Inc.*, No. 02-0388-CV-W-FJG, 2005 WL 1138833, at *4 (W.D. Mo. Mar. 23, 2005) (granting defendants' motion to exclude plaintiffs' expert testimony); *Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 WL 1506892, at *2 (N.D. Ill. Sept. 21, 2000) (precluding in part plaintiffs' expert testimony). It is then possible that, in the unavoidable "battle of experts," a jury might disagree with the Class's expert, or merely find Defendants' expert

16

more persuasive than Lead Plaintiff's.[7] As a result of the aforementioned considerations, the likelihood of proving damages, even assuming the Class prevailed on the liability issue, is somewhat difficult. *See Veeco,* 2007 WL 4115809, at *9. As a result, this factor also weighs in favor of the Settlement.

6. <u>The Risks of Maintaining this Class Action Through Trial (If Possible)</u>

As discussed in Section III, above, Lead Plaintiff believes that this Action satisfies the requirements for class certification under Rule 23. Had this Settlement not been reached, however, there would be no assurance of maintaining class status, since courts may exercise their discretion to re-evaluate the appropriateness of class certification at any time. *Bellifemine*, 2010 WL 3119374, at *4; *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476–77 (S.D.N.Y. 1998). Absent settlement, Defendants would likely oppose class certification, and would likely move to de-certify the Class at a later stage if their initial class certification defenses were unsuccessful. *E.g., O'Connor*, 2012 WL 12743, at *5. The Settlement prudently avoids any uncertainty with respect to judicial resolution of these issues.

---

[7] *See, e.g., PaineWebber,* 171 F.R.D. at 129 (noting the unpredictability of battle of damage experts); *In re Warner Commc'ns Sec. Litig.,* 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd,* 798 F.2d 35 (2d Cir. 1986). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe").

7. __The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation__

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of 'plaintiffs' case." *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd sub nom. In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145 (2d Cir. 1987). "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Veeco*, 2007 WL 4115809, at *11.

Instead, the court need only determine whether the settlement falls within a "'range of reasonableness.'" *PaineWebber,* 171 F.R.D. at 130 (citation omitted); *Newman*, 464 F.2d at 693 ("[I]n any case there is a range of reasonableness with respect to a settlement."). *See also Indep. Energy,* 2003 WL 22244676, at *4 (noting that very few cases tried before a jury result in full amount of damages claimed). The Second Circuit has described the "'range of reasonableness" as "'a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in . . . any litigation.'" *Wal-Mart Stores,* 396 F.3d at 119 (quoting *Newman*, 464 F.2d at 693). Nevertheless, this Settlement, which represents *over 20%* of Lead Plaintiff's most aggressive estimate of maximum provable damages, materially exceeds the average recovery in shareholder litigation. *See* Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements: 2011 Review and Analysis, at* 7 (Cornerstone

Research 2012) (median recovery rate as a percentage of "estimated damages" averaged 2.1% in 2011).

Finally, in analyzing the reasonableness of the Settlement, the Court should consider that the Settlement provides for an immediate, risk-free payment to the Class, rather than a speculative, potential payment that could only occur years later. *See AOL Time Warner,* 2006 WL 903236, at *13 (where the settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will … be realized far earlier than a hypothetical post-trial recovery"). In light of the complex legal and factual issues typically present in securities class actions, and the unpredictability of a lengthy and complex litigation, the fairness of this substantial, early Settlement is readily apparent. *Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002).

Considering all of the Grinnell factors together, this Court should finally approve the Settlement.

### 8.   The Ability of the Defendants to Withstand a Greater Judgment

The court may also consider Defendants' ability to withstand a judgment greater than that secured by settlement. *Grinnell,* 495 F.2d at 463. The mere fact, however, that Tangoe could have paid more money does not render the Settlement unreasonable. *See In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that [the defendant] could afford to pay more does not mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *Collins*, 2010 WL 1677764, at *5 (defendant is not required to

"'empty its coffers" before a settlement can be found adequate) (citation omitted). Given that Tangoe is no longer a public company, Lead Plaintiff is unaware of its or any Individual Defendant's ability to pay.

Where, as here, the other *Grinnell* factors weigh in favor of final approval, this factor alone does not suggest that the settlement is unfair or unreasonable. *Id.* For all of the reasons set forth above, the Court should find that the *Grinnell* factors, taken together, weigh in favor of final approval of the Settlement. It should, therefore, approve the Settlement as fair, reasonable and adequate.

## V.   THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole: "'namely, it must be fair and adequate:" *Maley*, 186 F. Supp. 2d at 367 (citation omitted); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005). "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003) (citation omitted), *aff'd sub nom. Wal-Mart Stores, Inc.*, 396 F.3d 96. A plan of allocation "need only have a reasonable and rational basis, particularly if recommended by experienced and competent counsel." *Flag Telecom*, 2010 WL 4537550, at *21; *see also WorldCom,* 388 F. Supp. 2d at 344 (same). Further, courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

The Plan of Allocation, which the Court-approved Notice fully described, has a rational basis. Lead Counsel formulated the Plan of Allocation in consultation with a damages consultant to maximize distribution where liability is strongest and no loss causation problem prevents recovery, establishing its fairness. *See Veeco*, 2007 WL 4115809, at *13. The Plan of Allocation reflects the requirements for establishing damages promulgated by *Dura Pharm.,* 544 U.S. 336, and complies with the requirements of the PSLRA. Under the proposed Plan of Allocation, each Authorized Claimant (as defined in 111 .1 of the Stipulation) will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, the settlement consideration less taxes, approved costs, fees, and expenses), with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.

The Plan of Allocation takes into account when Class Members purchased and when and whether Class Members sold their Tangoe common stock. Accordingly, some shareholders may benefit more from the Settlement than others depending upon when they purchased their Tangoe common stock. This is fair and reasonable, as there is no rule that a settlement benefit all class members equally. *Veeco*, 2007 WL 4115809, at *13; *Global Crossing,* 225 F.R.D. at 462. Indeed, it is appropriate for interclass allocations to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue. *See In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2005). Otherwise, certain class members

may receive an inequitable windfall, to the detriment of others. *PaineWebber,* 171 F.R.D. at 133.

Lead Counsel believe that the Plan of Allocation is fair and reasonable, and respectfully submit that it should be approved by the Court. It should be noted that not one objection to the Plan of Allocation has been filed, which also supports approval by the Court. *See Veeco,* 2007 WL 4115809, at *14; *Maley*, 186 F. Supp. 2d at 367.

## VI.    <u>CONCLUSION</u>

The Settlement in this Action is an outstanding result under the circumstances presented. For all of the foregoing reasons, the Court should finally certify the Class, for settlement purposes only and grant final approval to the Settlement and the Plan of Allocation as fair, reasonable, and adequate.

Dated: February 1, 2018                         Respectfully submitted,

                                                SHAPIRO LAW OFFICES, LLC

                                                <u>*/s/ Jonathan M. Shapiro*</u>
                                                **Jonathan M. Shapiro (ct24075)**
                                                **32 Washington Street**
                                                **Middletown, Connecticut 06457**
                                                **Telephone: (860) 347-3325**
                                                **Facsimile: (860) 347-3874**
                                                **jshapiro@shapirolawofficesct.com**

                                                **THE ROSEN LAW FIRM, P.A.**
                                                **Jacob A. Goldberg (*pro hac vice*)**
                                                **101 Greenwood Avenue, Suite 440**
                                                **Jenkintown, PA 19046**
                                                **Telephone: (215) 600-2817**
                                                **Facsimile: (212) 202-3827**
                                                **Email: jgoldberg@rosenlegal.com**

**FINKELSTEIN & KRINSK LLP**
**Jeffrey Krinsk (*pro hac vice*)**
**David J. Harris, Jr. (*pro hac vice*)**
**550 West "C" Street, Suite 1760**
**San Diego, CA 92101**
**Telephone:  (619) 238-1333**
**Facsimile:  (619) 238-5425**
**Email: jkrinsk@classactionlaw.com**

***Attorneys for Lead Plaintiff***

23

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of February, 2018, a true and correct copy of the foregoing  LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Jonathan M. Shapiro*