**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| | : |
| | :    **Civil Action No.: 3:17-cv-00146-VLB** |
| | : |
| **IN RE TANGOE, INC., SECURITIES** | : |
| **LITIGATION** | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| | : |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF**

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................. 1

II.  FACTS ............................................................................... 2

III. ARGUMENT ...................................................................... 3

   A.  The Application for an Award of Attorneys' Fees and Reimbursement of Expenses Is Reasonable and Should Be Approved ........................................ 3

     1.  Legal Standard for an Award of Attorneys' Fees ....................................... 3

     2.  The Requested Fee is Fair Under the Percentage-of-Recovery Method and Second Circuit's *Goldberger* Factors ................................................... 4

       (a)  Time and Labor Expended By Counsel ................................................... 6

       (b)  The Magnitude and Complexities of the Litigation/Risks of Litigation . 7

       (c)  The Quality of Representation ................................................................. 9

       (d)  The Requested Fee in Relation to the Settlement ................................ 11

       (e)  Public Policy Considerations ................................................................ 12

     3.  The Lodestar "Cross-Check" Supports the Reasonability of the Fee Award Lead Plaintiff Requests. ................................................................ 14

     4.  Reimbursement of Litigation Expenses .................................................... 16

     5.  The Proposed Award to Lead Plaintiff is Reasonable ............................. 17

IV. CONCLUSION ................................................................. 18

i

## TABLE OF AUTHORITIES

<u>Cases</u>

*Aponte v. Comprehensive Health Mgmt., Inc.*,
    No. 10 CIV. 4825 JLC, 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) .......................... 15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) ................................................................................. 4

*Berchin v. Gen. Dynamics Corp.*,
    No. 93 CIV. 1325 (JSM), 1996 WL 465752 (S.D.N.Y. Aug. 14, 1996) ..................... 11

*Blum v. Stenson*,
    465 U.S. 886 (1984) ............................................................................ 4, 14

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ................................................................................. 3

*Campos v. Goode*, No. 10 CIV. 0224 DF,
    2011 WL 9530385 (S.D.N.Y. Mar. 4, 2011) ............................................... 16

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ............................................................. 7

*Cherner v. Transitron Elec. Corp.*,
    221 F. Supp. 55 (D. Mass. 1963) .............................................................. 9

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ............................................................ 9, 10, 14

*Collins v. Olin Corp.*,
    No. 303-CV-945CFD, 2010 WL 1677764 (D. Conn. Apr. 21, 2010) ..................... 5

*Dolgow v. Anderson*,
    43 F.R.D. 472 (E.D.N.Y. 1968) ................................................................. 4

*Eltman v. Grandma Lee's, Inc.*,
    No. 82 CIV. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ........................ 10, 12

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) .............................................................. passim

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................. 14

*Hicks v. Stanley*,
    No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............... 17

*In re AOL Time Warner, Inc. Sec.*, No. 02 CIV. 5575 (SWK),
  2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) ........................................................ 6, 14

*In re AT & T Corp.*,
  455 F.3d 160 (3d Cir. 2006) ..................................................................................... 15

*In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act
  (ERISA) Litig.*,
  772 F.3d 125 (2d Cir. 2014) ..................................................................................... 17

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................... 16

*In re Blech Sec. Litig.*,
  No. 94 CIV 7696 (RWS), 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) ................... 11

*In re Cont'l Illinois Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) .................................................................................... 14

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................... 15

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................... 12, 17

*In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000) ................ 7, 8

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ..................... 17

*In re Media Vision Tech. Sec. Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1996) ......................................................................... 16

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ............................................................................... 16

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................... 15

*In re Priceline.com, Inc. Sec. Litig.*, No.,
  3:00CV1884AVC, 2007 WL 2115592 (D. Conn. July 20, 2007) ............................... 13

*In re StockerYale, Inc. Sec. Litig.*,
  No. 1:05CV00177-SM, 2007 WL 4589772 (D.N.H. Dec. 18, 2007) .......................... 11

*In re Twinlab Corp. Sec. Litig.*,
  187 F. Supp. 2d 80 (E.D.N.Y. 2002) ........................................................................ 14

*In re Warner Commc'ns. Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ........................................................ 9, 11

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ......................................................... 3

*J. I. Case Co. v. Borak*,
    377 U.S. 426 (1964) .................................................................................... 4

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ........................................................ 5

*Menkes v. Stolt-Nielsen S.A.*,
    No. 3:03CV00409(DJS), 2011 WL 13234815 (D. Conn. Jan. 25, 2011) .............. 5, 11

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) .................................................................................... 3

*Miltland Raleigh-Durham v. Myers*,
    840 F. Supp. 235 (S.D.N.Y. 1993) ............................................................ 16

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
    818 F.2d 278 (2d Cir. 1987) ...................................................................... 16

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 CIV 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ........................ 15

*State of W. Va. v. Chas. Pfizer & Co.*,
    314 F. Supp. 710 (S.D.N.Y. 1970) .............................................................. 8

*Stein v. Tangoe, Inc.*,
    No. 3:13-CV-00286 (VLB), 2014 WL 12767210 (D. Conn. Sept. 30, 2014) .............. 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ........................................................................ 15

**Statutes**

15 U.S.C. § 78u-4(a)(6) ................................................................................ 5

15 U.S.C.A. § 78u-4(a)(4) ........................................................................... 17

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 7

iv

I.      **INTRODUCTION**

**Lead Plaintiff James Alpha Multi Strategy Alternative Income Portfolio ("Lead Plaintiff"), on behalf of itself and the Settlement Class,[1] respectfully submits this memorandum in support of the motion for an award of attorneys' fees and reimbursement of expenses to Lead Counsel, and an award to Lead Plaintiff.[2]**

**Having achieved an immediate and significant $2,550,000 cash benefit for the Class, Lead Counsel seeks attorneys' fees of one-third of the Settlement Amount, or $850,000. This requested attorneys' fees award represents a lodestar multiplier of 1.38 based on the lodestar of Lead Counsel of $616,837 (for 973.7 hours of attorney and paralegal work). *See* Joint Declaration of Jacob A. Goldberg and Jeffrey R. Krinsk In Support of Lead Plaintiff's Motion For: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff ("Joint Decl." or "Joint Declaration"), filed herewith, ¶¶18, 78.**

---

**[1]** **"Settlement Class" means "all Persons (including, without limitation, their beneficiaries) who purchased Tangoe, Inc. securities during the period from May 10, 2013 through June 17, 2017, inclusive, and excluded from the Settlement Class are all (i) Defendants Tangoe, Albert R. Subbloie, Jr. and Gary R. Martino, and all current and former officers and directors of Tangoe and its subsidiaries; (ii) blood relatives and household members of any such person excluded under (i); (iii) any entities affiliated with, controlled by, or more than 5% owned by, any person excluded under (i) and (ii); (iv) the legal representatives, heirs, successors or assigns of any person excluded under (i) through (iii), in their capacity as such; and (v) Opt-Outs (*i.e.*, Persons who file valid and timely requests for exclusion from the Settlement Class in accordance with this Order)." ("Preliminary Approval Order") (Dkt. No. 64 at ¶2).**

**[2]** **Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), filed with the Court on October 3, 2017 (Dkt. No. 59-2).**

Lead Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in connection with the prosecution of this action in the amount of $35,194.13. Joint Decl. ¶¶20, 80. These expenses were both reasonable and necessary for the successful prosecution and resolution of the claims against Defendants. Additionally, Lead Plaintiff seeks an award of $10,000 as compensation for the time spent and service to the Settlement Class. Joint Decl. ¶81.

In light of the risks faced, the complexity of the case, the quality of legal work performed, necessary expenses incurred, the amount of time and effort expended by Lead Counsel, and the size of the fee and expense request in relation to the Settlement achieved, the fee and expense requests are both fair and reasonable under the standards used in the Second Circuit.

## II.  FACTS

Lead Counsel worked diligently and thoughtfully to achieve this favorable Settlement for Lead Plaintiff and the Class. Although this Action may not have been procedurally advanced, Lead Counsel expended considerable time and resources to achieve this impressive result and recovery for Tangoe shareholders efficiently. Lead Counsel did so by investigating Defendants by not only scouring publicly available information, but also retaining investigators who worked closely with Lead Counsel. Further, Lead Counsel engaged an accounting expert to bolster allegations of Defendants' accounting violations. These undertakings resulted in a draft amended complaint that, although was never filed due to the specific course of events during the Action, convinced and compelled

2

Defendants to resolve the Action. Joint Decl. ¶58. Also, Lead Counsel retained a damages consultant to evaluate Class members' economic loss that assisted Lead Counsel to evaluate the value of Lead Plaintiff's claims. Further, Lead Counsel prepared an extensive mediation statement, participated in an all-day mediation session, negotiated the Settlement's details, and successfully moved for preliminary approval. Joint Decl. ¶¶9, 43-44.

Lead Counsel's considerable efforts and expertise were integral for Lead Plaintiff and the Class to achieve this Settlement which recovers at least 21% of damages. Joint Decl. ¶¶15, 50, 60. Accordingly, Lead Counsel should be compensated for their efforts.

III.    **ARGUMENT**

    A.    **The Application for an Award of Attorneys' Fees and Reimbursement of Expenses Is Reasonable and Should Be Approved**

        1.    **Legal Standard for an Award of Attorneys' Fees**

The Supreme Court, the Second Circuit, and courts within this Circuit have all recognized that where counsel's efforts have created a "common fund" for the benefit of a class, counsel should be compensated from that common fund. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393 (1970); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005) ("When attorneys create a common fund from which members of a class are compensated for a common injury, they are entitled to a reasonable fee – set by the court – to be taken from the fund.") (internal quotation omitted).

Awards of attorneys' fees from a common fund serve the dual purposes of encouraging representatives to seek redress for damages caused to an entire class of persons and discouraging future misconduct of a similar nature. *Dolgow v. Anderson,* 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968). Because the common fund doctrine provides incentives for plaintiffs and their counsel both to serve investors and to deter securities misconduct, the Supreme Court has emphasized that private securities actions "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

### 2.    The Requested Fee is Fair Under the Percentage-of-Recovery Method and Second Circuit's *Goldberger* Factors

The Supreme Court has consistently held that the percentage-of-recovery approach is a correct method for determining attorneys' fees in common fund cases. *See Blum v. Stenson*, 465 U.S. 886, 900, n. 16 (1984). In determining a reasonable fee, the Second Circuit has set forth six factors that courts should consider in determining the reasonableness of a request for attorneys' fees in a common fund action:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (internal quotations omitted).  Each of these factors supports the fee Lead Plaintiff requests here.

In *Goldberger*, the Second Circuit examined the history of alternative methods for calculating attorneys' fees and expressly approved use of the percentage-of-recovery method in awarding fees from a common fund. *Id.*, 209 F. 3d at 50. Indeed, according to this Court, "[t]he Second Circuit has expressed a preference for the percentage method of calculating attorneys' fees, noting that such an approach 'aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Collins v. Olin Corp.*, No. 303-CV-945CFD, 2010 WL 1677764, at *6 (D. Conn. Apr. 21, 2010) (citation and internal punctuation omitted); *see also*, *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409(DJS), 2011 WL 13234815, at *4 (D. Conn. Jan. 25, 2011).

The Private Securities Litigation Reform Act of 1995 ("PSLRA") that governs this Action, too, supports this Court's determining Lead Counsel's fee based on a percentage of the recovery. The PSLRA states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class . . . ." 15 U.S.C. § 78u-4(a)(6); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) (when drafting the PSRLA, Congress "indicated a preference for the use of the percentage method").

In determining a reasonable fee under the percentage-of-recovery approach, courts look to the following factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the

5

settlement; and (6) public policy considerations. *In re In re AOL Time Warner, Inc. Sec.*, No. 02 CIV. 5575 (SWK), 2006 WL 3057232, at *11 (S.D.N.Y. Oct. 25, 2006) (*citing Goldberger*). An examination of each factor supports Lead Plaintiff's fee request here.

### (a)  Time and Labor Expended By Counsel

As set forth in the Joint Declaration, Lead Counsel expended 973.7 hours for an aggregate lodestar of $616,837 in the litigation of this Action. Joint Decl. ¶78. Lead Counsel, among other things: (a) conducted a thorough factual investigation, including a review of Tangoe's SEC filings, media reports, quarterly earnings call transcripts, and other publicly available documents about Tangoe, its business and the Individual Defendants; (b) successfully moved for lead plaintiff and lead counsel appointment on behalf of Lead Plaintiff; (c) retained and consulted with private investigators relating to the allegations in this Action; (d) identified numerous witnesses and developed leads; (e) consulted with an expert in generally accepted accounting principles and discussed the alleged accounting violations in the context of Tangoe's accounting policies; (f) researched and prepared a draft amended complaint; (g) consulted with a damages consultant to evaluate to economic losses suffered by Class members; (h) prepared a detailed and thorough mediation statement and attended a full-day, in-person mediation session in New York; (i) negotiated the Settlement terms as well as all written Settlement-related documents; (j) presented those settlement terms to this Court by way of a motion for preliminary approval of the proposed settlement; and (k) oversaw the provision of notice to the Class and monitored

the work of the selected Claims Administrator. Joint Decl. ¶9. Accordingly, the time and labor expended by Lead Counsel here supports the requested fee.

        **(b)**    <u>**The Magnitude and Complexities of the Litigation/Risks of Litigation**</u>

This Court will next examine the magnitude and complexity of the litigation when evaluating the reasonableness of attorneys' fees. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992). "[S]ecurities actions have become more difficult from a plaintiffs perspective in the wake of the PSLRA." *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).

Measuring the magnitude of this case, in connection with their loss causation and damages expert consultant, Lead Counsel has determined that the damages do not exceed $12 million and are as low as approximately $5 million. The damages in this case pose no existential threat to Tangoe or its new parent. On the other hand, the Settlement value for the Class relative to the damages is between approximately 21% on the high-end and 50% on the low end. That recovery materially exceeds the norm, supporting the fee Lead Plaintiff requests. Joint Decl. ¶¶50, 60.

While Lead Plaintiff fully addresses the specific complexities and risks of litigation in the Final Approval Memorandum of Law, this Action faced many of the same risks as other PSLRA cases. In particular, the PSLRA imposes a substantial burden on a securities class action plaintiff's pleading scienter well beyond a normal motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b). In this case, pleading material falsity posed an initial hurdle. While in cases involving

restatements of financial statements defendants admit to material falsity—issuers do not restate their historical financial statements unless they are materially false—here, Tangoe never disclosed audited, restated financial statements. Joint Decl. ¶35. Because it agreed to merge into another entity, Tangoe is no longer public. *Id.* ¶24. Lead Counsel is confident that the Complaint would have overcome this hurdle. Absent an actual restatement, however, Defendants would have argued that Lead Plaintiff could not have established material falsity with requisite particularity.

More, even if this Court ruled that the Complaint adequately pleaded material falsity, adequately pleading scienter imposes a heavy burden on Lead Plaintiff, even where Defendants restated financial results. While Lead Counsel believe they had sufficient facts to overcome this high burden, this Court, itself, had dismissed an earlier, unrelated case against Tangoe for the complaint's failure to plead scienter. *Stein v. Tangoe, Inc.*, No. 3:13-CV-00286 (VLB), 2014 WL 12767210, at *19–20 (D. Conn. Sept. 30, 2014) (Bryant, J.).

Thus, although Lead Counsel believes that this action has significant merit, given the risks of any litigation, the prospect of a favorable verdict was far from assured. Plaintiffs have lost less complex cases on motion, at trial, or on appeal. *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2d Cir. 1971), *cert. denied*, 404 U.S. 871 (1971) (discussing examples of plaintiffs who rejected settlements and, after trial, received either nothing or less than the defendants had offered).

8

The Second Circuit explicitly recognizes that this Court should consider the attorneys' "risk of litigation" analysis as an important factor in determining an appropriate fee award. In *Grinnell*, the Second Circuit explained:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (quoting *Cherner v. Transitron Elec. Corp.*, 221 F. Supp. 55, 61 (D. Mass. 1963)). In many cases Lead Counsel have spent thousands of hours and received no payment. Further, due to the circumstance of this case – Lead Plaintiff has not overcome a motion to dismiss, not to mention facing summary judgment or trial – Lead Counsel submits that the risk of obtaining a smaller recovery, or no recovery at all, materially increases without this Settlement. As such, the complexities and the risk of the Class's receiving nothing supports Lead Plaintiff's fee request.

(c)      The Quality of Representation

The result achieved and the quality of the services provided are also important factors to consider in determining the amount of reasonable attorneys' fees under a percentage of the fee analysis. *See Goldberger*, 209 F.3d at 50; *In re Warner Commc'ns. Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). Despite the significant risk of no recovery in this action, Lead Counsel successfully obtained a substantial cash settlement for the Class representing approximately 21% of the high-end of class damages of

approximately $12 million and 50% of the low-end of the range. Joint Decl. ¶¶50, 60.

This recovery well exceeds the range of historical values of settlements in securities cases. According to analyst firm Cornerstone Research, for settlements under $50 million, in 2016 the median settlement was 7.3% of damages and for 2006 to 2015, the median settlement was 10.8% of damages. *See* Cornerstone Research, *Securities Class Action Settlements*: 2016 Review and Analysis, at 7 (2017) at 8.[3]

The standing and prior experience of Lead Counsel is also relevant in determining fair compensation. *See, e.g., Grinnell*, 495 F.2d at 470; *Eltman v. Grandma Lee's, Inc.*, No. 82 CIV. 1912, 1986 WL 53400, at *4 (E.D.N.Y. May 28, 1986). Here, Lead Plaintiff and the Class are represented by The Rosen Law Firm, P.A. ("Rosen Law") and Finkelstein & Krinsk LLP ("F&K") as Lead Counsel and Shapiro Law Offices, LLC ("Shapiro") as Liaison Counsel. As their firm resumes demonstrate,[4] Rosen Law and F&K have extensive experience in the specialized field of shareholder securities litigation. Accordingly, Lead Counsel was able to

---

[3]Available at http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12-2016-Review.pdf. (Last Viewed on February 1, 2018).

[4] The firm resumes are attached as Exhibit A to the Declaration of Jacob A. Goldberg on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Goldberg Fee Decl."), Exhibit A to the Declaration of Jeffrey Krinsk on behalf of Finkelstein & Krinsk LLP Concerning Attorneys' Fees and Expenses ("Krinsk Fee Decl."), and Exhibit A to the Declaration of Jonathan M. Shapiro on Behalf of Shapiro Law Offices, LLC Concerning Attorneys' Fees and Expenses ("Shapiro Fee Decl."), attached respectively as Exhibits 2 through 4 to the Joint Declaration.

leverage its experience and resources to assess the merits and value of the case and successfully to negotiate the Settlement.

The quality and vigor of opposing counsel is also important in evaluating the services rendered by Lead Counsel. *See, e.g.*, *Warner Commc'ns*, 618 F. Supp. at 749. Here, Defendants were represented by Wilmer Cutler Pickering Hale and Dorr, LLP, Dentons US LLP, and Finn Dixon & Herling LLP, all of whom aggressively represented their clients' interests. That Lead Counsel achieved this settlement for the Class in the face of high-quality legal opposition further evidences the quality of Lead Counsel's efforts herein. Together with the achievement of a relatively high recovery of total damages, the quality of representation supports Lead Plaintiff's fee request.

### (d)    The Requested Fee in Relation to the Settlement

The fee request of one-third of the Gross Settlement Fund is in line with the percentages courts in this Circuit have awarded in similar securities class action settlements of this size. *See, e.g.*, *Menkes*, 2011 WL 13234815, at *6 (awarding one-third of $2 million settlement fund); *In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS), 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) (awarding one-third of $2,795,000 settlement fund); *Bensley v. Falconstor Software, Inc., et al.*, No. 1:10-cv-04572 (ERK)(CLP) (E.D.N.Y.) Dkt. No. 84 (one-third of $5 million); *Singh v. Tri-Tech Holdings, Inc.,* No. 13-cv-9031 (KMW) (S.D.N.Y. 2013) Dkt. No. 60 (one-third of $975,000); *Berchin v. Gen. Dynamics Corp.*, No. 93 CIV. 1325 (JSM), 1996 WL 465752, at *2 (S.D.N.Y. Aug. 14, 1996) (one-third of first $3 million); *In re StockerYale, Inc. Sec. Litig.*, No. 1:05CV00177-SM, 2007 WL 4589772, at *6 (D.N.H.

11

Dec. 18, 2007) (33% of $3.4 million settlement fund); *In re Fuwei Films Sec. Litig.*, No. 07-CV-10323 (RJS) (S.D.N.Y.), Dkt. No. 86 (one-third of $2.15 million); *Perry v. Duoyuan Printing, Inc.*, No. 10-cv-7235 (GBD) (S.D.N.Y.), Dkt. No. 185 (one-third of $4.3 million); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (one-third of $13 million).

Further, NERA Economic Consulting published a report directly addressing attorneys' fees in comparable size to the proposed Settlement which concluded that between 1996 and 2011, for securities class-action settlements less than $5,000,000, the median plaintiffs' attorneys' fee award was one-third of the settlement, and between 2012 and 2016, the median plaintiffs' attorneys' fee award was 30%. *Recent Trends in Securities Class Action Litigation: 2016 Full-Year Review* (2017)[5] at 39.

Accordingly, under the percentage-of-recovery approach, the attorneys' fee requested by Lead Counsel in this securities class action case is fair and reasonable and is wholly consistent with previous awards made by Courts within this Circuit.

(e)      Public Policy Considerations

Private lawsuits further the objective of the federal securities laws to protect investors and consumers against deceptive practices. *Eltman*, 1986 WL 53400, at *4. As a practical matter, private lawsuits require competent counsel for their prosecution, *id.,* and competent counsel can be obtained only if courts

---

[5]   Available at https://www.supremecourt.gov/opinions/URLs_Cited/OT2016/16-373/16-373-1.pdf. (Last Viewed on February 1, 2018).

award reasonable and adequate compensation for their services where successful results are achieved. "To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding." *Id*; *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00CV1884AVC, 2007 WL 2115592, at *5 (D. Conn. July 20, 2007) ("The award of the percentage requested here will encourage enforcement of the securities laws and support attorneys' decisions to take these types of cases on a contingent fee basis. The fee fairly compensates competent counsel in a complex securities case and helps to perpetuate the availability of skilled counsel for future cases of this nature."). Here, Lead Counsel undertook this litigation with no guarantee of any recovery or that Defendants would be able to provide the Class with a reasonable settlement amount. Lead Counsel should be rewarded for the extensive work undertaken in achieving the Settlement for Lead Plaintiff and the Class.

These public policy goals are relevant as the integrity of the markets depends on companies complying with the federal securities laws. It is vital for the markets and for the Courts that competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner prosecute these matters. Public policy supports the award of the attorneys' fees requested here.

For all of these reasons, including the result Lead Counsel achieved for the Class and the substantial efforts and considerable expenses Lead Counsel undertook on a contingent fee basis in a risky case, Lead Plaintiff respectfully

13

requests that the Court award attorneys' fees equal to one-third of the Gross Settlement Fund.

### 3.   The Lodestar "Cross-Check" Supports the Reasonability of the Fee Award Lead Plaintiff Requests.

As a check on the reasonability of the fee award it will base on the percentage of the recovery, this Court may consider Lead Counsel's lodestar to determine, generally, whether it supports the fee Lead Plaintiff requests. *In re AOL Time Warner, Inc. Securities*, 2006 WL 3057232, at *40 (describing this second analysis as the "lodestar cross-check"); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 85 (E.D.N.Y. 2002). Although the Second Circuit has encouraged the practice of performing this lodestar "cross-check" on the reasonableness of a fee award based on the percentage of recovery approach, when doing so, the hours documented "need not be exhaustively scrutinized." *Goldberger*, 209 F.3d at 50.

To calculate the lodestar "multiplier," the Court will divide the fee Lead Plaintiff requests by Lead Counsel's "lodestar."[6] *Grinnell*, 495 F.2d at 470-71. Lead Counsel expended 973.7 hours for a lodestar of $616,837 in the litigation of this case. Joint Decl. ¶78.[7] The lodestar multiplier is 1.38. *Id.* at ¶79. "Lodestar

---

[6] The lodestar is the number of hours Lead Counsel has billed times each attorney's hourly rate.

[7] In computing the lodestar, the hourly billing rate to be applied is the "market rate", *i.e.*, the hourly rate that is normally charged in the community where counsel practices. *See, e.g.*, *Blum*, 465 U.S. at 895; *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983) ("market standards should prevail"); *In re Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order," holding that district court committed legal error

14

multipliers of nearly 5 have been deemed 'common' by courts in this District." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *17 (S.D.N.Y. July 27, 2007) (citing cases); *see e.g., Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 (2d Cir. 2005) (affirming 3.5 multiplier)*; Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) (3.05 multiplier); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (3.97 multiplier); *In re AT & T Corp.*, 455 F.3d 160, 173 (3d Cir. 2006) (reaffirming prior holding that 2.99 multiplier was reasonable in case that lasted "four months, 'discovery was virtually nonexistent'").

Moreover, Lead Counsel's legal work will not end with the Court's approval of the Settlement. Rather, they will expend material additional hours and resources, assisting Settlement Class Members, overseeing the claims process, responding to Settlement Class Members' inquiries, and ensuring distribution of funds. *See Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 CIV. 4825 JLC, 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request."). These additional hours will go uncompensated.

---

in placing "a ceiling of $175 on the hourly rates of all lawyers for the class, including lawyers whose regular billing rates were almost twice as high").

Because the 1.38 multiplier is well within the range of, and even below, lodestar multipliers courts in this Circuit approve, the lodestar cross-check further supports the reasonableness of Lead Plaintiff's fee request.

### 4.      Reimbursement of Litigation Expenses

Lead Counsel requests reimbursement of $35,194.13 in litigation costs and expenses incurred or expected to be incurred in connection with the prosecution of this Action. *See* Joint Decl. ¶80. Courts routinely hold that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses that would have been reimbursed by a paying client. *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993); *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008).

Larger expense items include investigator fees of $9,737.52, mediation fees of $9,165.15, Damages Expert fees of $5,783, and Accounting Expert fees of $2,925. Joint Decl. ¶80. These fees were necessary for the prosecution and resolution of the action. *See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (reimbursing over $1 million in expert expenses to plaintiff's counsel); *Campos v. Goode*, No. 10 CIV. 0224 DF, 2011 WL 9530385, at *8 (S.D.N.Y. Mar. 4, 2011) (reimbursing mediation fee); *In re In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367 (N.D. Cal. 1996) (reimbursing investigator fee).

### 5. The Proposed Award to Lead Plaintiff is Reasonable

Lead Plaintiff may be compensated for the time it has spent overseeing the case. *In re Giant Interactive*, 279 F.R.D. at 166; *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009). The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C.A. § 78u-4(a)(4). Congress, in fact, intended to grant courts discretion to approve awards in appropriate cases. Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming award of PSLRA expense and costs to lead plaintiffs totaling $453,000).

Lead Plaintiff devoted time and energy to this case, reviewing the pleadings as well as conferring with counsel about case strategies and resolution of the Action. Joint Decl. ¶¶81-82. Therefore, Lead Plaintiff requests an award of $10,000 to reimburse it for the time it spent on this case.

## IV.    CONCLUSION

For all of the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant Lead Counsel's application for an award of attorneys' fees, reimbursement of reasonable expenses, and an award to Lead Plaintiff for services rendered to the Settlement Class.


Dated: February 1, 2018                              Respectfully submitted,


SHAPIRO LAW OFFICES, LLC

*/s/ Jonathan M. Shapiro*
**Jonathan M. Shapiro (ct24075)**
**32 Washington Street**
**Middletown, Connecticut 06457**
**Telephone: (860) 347-3325**
**Facsimile: (860) 347-3874**
**jshapiro@shapirolawofficesct.com**

THE ROSEN LAW FIRM, P.A.
Jacob A. Goldberg
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827
Email: jgoldberg@rosenlegal.com

FINKELSTEIN & KRINSK LLP

*/s/ Jeffrey Krinsk*
**Jeffrey Krinsk  (*pro hac vice*)**
**David J. Harris, Jr.**
**550 West "C" Street, Suite 1760**
**San Diego, CA 92101**
**Telephone:  (619) 238-1333**
**Facsimile:  (619) 238-5425**
**Email: jkrinsk@classactionlaw.com**

*Attorneys for Lead Plaintiff*

18

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 1st day of February, 2018, a true and correct copy of the foregoing Memorandum of Law in Support Motion for Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff was served by CM/ECF to the parties registered to the Court's CM/ECF system.


<u>*/s/ Jonathan M. Shapiro*</u>

**19**